Filed 7/9/13  P. v. Johnson CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B241832 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA391178) |
| v. | |
| SEMAJ JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig E. Veals, Judge.  Affirmed and remanded.

Julie Schumer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and Rama R. Maline, Deputy Attorney General, for Plaintiff and Respondent.

_____

The jury found defendant and appellant Semaj Johnson guilty of inflicting corporal injury to a cohabitant (Pen. Code, § 273.5, subd. (a)).[1] Defendant admitted the allegations that he suffered one prior serious or violent felony conviction within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and served three prior prison terms (§ 667.5, subd. (b)).[2]

The trial court sentenced defendant to a base term of four years, doubled to eight years pursuant to the three strikes law. The court struck one of the prior prison term allegations for sentencing purposes only but neither imposed nor struck the two remaining prior prison term allegations.

On appeal, defendant contends that: (1) a prosecution witness's revelation that he was a parolee was unduly prejudicial and required a mistrial; (2) the trial court erred by restricting his ability to directly examine an impeachment witness; and (3) his counsel rendered ineffective assistance by failing to object to witness testimony concerning his past abuse of the victim and by failing to object on the proper ground in one instance. The Attorney General contends, and defendant agrees, that the cause must be remanded to the trial court with directions to either impose or strike the two prior prison term allegations which were not resolved at sentencing.

We remand for clarification of sentencing as to the two unresolved prior prison term enhancements, but otherwise affirm the judgment.

---

[1]     Unless otherwise indicated, all statutory references are to the Penal Code.

[2]     One additional felony charge was dismissed by the district attorney and defendant was found not guilty on two other charges.

# FACTS

We view the facts in the light most favorable to the judgment. Defendant and Makeisha H. were living with Makeisha's mother, Cecilia T., and her boyfriend, Jeffrey C., in Cecilia's apartment in November of 2011.

On November 20, 2011, at approximately 10:00 a.m., Cecilia and Jeffrey went into the living room. Defendant was threatening Makeisha with an approximately 14-inch long knife, taken from Cecilia's kitchen. He told Makeisha he was going to carve her "in pieces." He added, "[a]nd when I'm finished with you, Makeisha, I'm going to do your mother. I'm gonna get her next."

Cecilia told defendant she was not afraid of him. Makeisha ran around the living room and told defendant to stop. At one point, defendant punched Makeisha in the jaw. She cried, "Mama, he's gonna cut me." Cecilia ran behind defendant and told him not to hurt her daughter. Jeffrey got between defendant and Cecilia and told defendant to put the knife away. Defendant complied after five or ten minutes.

Sometime before noon the same day, defendant and Makeisha left the apartment. They returned to the apartment, and between 1:00 and 3:00 p.m., defendant again attacked Makeisha, putting her in a chokehold, and punching her. Cecilia told him to let Makeisha go, but defendant did not release her. Makeisha was gasping for air and her mouth was foaming. Defendant threatened to kill Makeisha repeatedly and called her a "B." Makeisha said, "Mama, why is he doing this to me? Why?" Cecilia responded, "I don't know." Makeisha's face was swollen from defendant punching her, but she pleaded with Cecilia not to call the police. Jeffrey told defendant to stop choking Makeisha. Cecilia told Makeisha, "I'm sick of it. He needs to go," and ordered defendant to leave her house. Defendant refused to leave because he said Cecilia had stolen his wallet and he wanted the $70 he accused her of taking. Defendant then threatened to kill Makeisha again. Cecilia denied owing defendant any money.

Between 4:00 and 6:00 p.m., Jeffrey heard defendant tell Cecilia that if she called the police, his "goon squad" would "take care of" her. Defendant warned Cecilia,

3

"[s]nitches don't last." He told her he knew where she was and that he would have Makeisha ice-picked in the head.

At around 10:00 p.m. that evening, Cecilia and Jeffrey were in their bedroom with the door closed. Makeisha and defendant were in the living room, where they slept on the floor. Cecilia heard Makeisha crying for defendant to stop hurting her in a scared voice. She heard defendant talking about money and threatening to kill Makeisha if she kept getting out of line. Cecilia went into the living room and saw defendant punching Makeisha in the mouth. Cecilia told defendant to stop. Makeisha had a tissue that had blood on it from when defendant had punched her earlier. She used a white hoodie she had been wearing to wipe the blood from her mouth.

Makeisha acted as if nothing had happened and went to sleep on the floor with defendant. Cecilia was afraid for Makeisha's life. She went back into her room and told Jeffrey, "[l]ook, I'm tired of this. I can't allow no man to sit up here and beat my daughter in my house." After defendant was asleep, Cecilia and Jeffrey went outside and used her cell phone to call the police. She did not want to call them earlier because she was afraid Makeisha would leave with defendant if she knew the police were coming.

When Los Angeles Police Department officers arrived at approximately 3:00 a.m., they met with Cecilia and Jeffrey, who were still outside. Cecilia recounted what had happened that day and also told officers that defendant had run over Makeisha with Makeisha's car a couple of weeks earlier and she had a large scar on her upper thigh.[3] Cecilia gave Officer Kris Cummings a key, which he and other officers used to enter the apartment, where they saw defendant and Makeisha on the living room floor. Defendant was placed in custody, and Makeisha was taken into the bedroom for questioning.

Makeisha identified herself to the officers as Tiffani Wells, using a false name because she had four outstanding warrants for her arrest and did not want to be caught.[4]

---

[3]    Cecilia was not questioned about the car incident on the witness stand. She mentioned the incident in response to an unrelated question by the prosecutor.

[4]    Makeisha also had two felony convictions for theft, one in 2011 and one in 2008.

4

She denied being harmed by defendant. She had a laceration on her lower lip and appeared fearful and evasive. When police asked her how her lip became swollen, she explained she had rolled over in her sleep and hit a table. She denied that defendant had run over her with a car. The injury to Makeisha's face was consistent with Cecilia's version of events. Officer Cummings also observed a six-inch laceration with stitches on Makeisha's upper thigh. Makeisha's face was photographed by the police. Officer Cummings's understood that the laceration on her thigh would be photographed later. Makeisha told the police Cecilia had made up the abuse because she wanted Makeisha to give her money for drugs and let her use her car that day, but Makeisha had refused. Makeisha said Cecilia kept asking for money and the car keys. When Makeisha continued to refuse, Cecilia told her that she and defendant would have to leave the apartment. Makeisha told the officers that Cecilia had stolen defendant's wallet and stole money from her too.

Officer Cummings took defendant to the police station for booking. At some point before defendant was given his *Miranda* warnings, he asked Officer Cummings why he had been arrested. Officer Cummings answered that he was arrested for battery and because a witness reported defendant hit Makeisha with a car. Defendant admitted he had hit Makeisha with a car but said it was an accident, and that he had driven her to the hospital himself.

On November 23, 2011, Detective Richard Askew, an investigator in the case, called Cecilia's house and Makeisha answered, claiming to be Cecilia. Makeisha said she wanted to drop all charges against defendant. Cecilia grabbed the phone from Makeisha and spoke with Detective Askew.

Makeisha was angry with her mother for calling the police. Makeisha continued to stay at the apartment, but she would leave when police came to talk to Cecilia and Jeffrey.

At trial, Makeisha testified that defendant loved her and always treated her well. She explained that she had gotten into a fight with defendant's ex-girlfriend, Janice W., on the afternoon of the alleged incident, and that Janice had punched her in the mouth

5

with a closed fist. She did not tell the police officers that Janice had caused her swollen lip, because she was afraid that Janice would reveal her identity and she would be arrested. She denied that defendant assaulted her that day. She said that he never threatened her with a knife or said that he would carve her up. She insisted that defendant did not argue with either Cecilia or Jeffrey that day. Makeisha also denied that defendant hit her with a car and testified that the police did not examine her leg for injuries.

Janice testified to punching Makeisha in the mouth in April or May of 2011, causing her to bleed. She saw Makeisha and defendant in November of 2011 but did not have contact with Makeisha.

Prior to defendant's relationship with Makeisha, he dated Janice for approximately 10 years. Defendant was living with Janice in August of 2010.

On August 7, 2010, Janice called the police around 7:00 in the morning. Officer Christian Wecker and his partner responded to her call. When Janice met him at the door, she was crying and appeared extremely agitated and fearful. The officers detained defendant, who had run into the backyard. Officer Wecker's partner interviewed Janice. She said they had been arguing because defendant wanted money. She had refused and told him to go get a job. Defendant responded, "Fuck you, bitch. I'm just going to get some from one of my other bitches." Janice went into the laundry room area. Defendant came in and grabbed her by the neck from behind. Janice described it as a chokehold, where defendant was squeezing her neck from behind. She said defendant lifted her off the ground and shook her. He dropped her on the floor, and Janice screamed that she was going to call the police. She was gasping for breath.

Two days later, Janice told the police the arresting officer had blown the incident out of proportion, and defendant should not have been arrested. She called the police because she was angry with defendant because he had been cheating on her and wanted him to leave. The case was rejected for filing by the district attorney's office.

At trial, Janice said defendant had "hugged" her from the back in the laundry room. She said it was not a chokehold. She had been arguing about money with

6

defendant, and she told the 911 operator defendant had choked her because she wanted the police to come quickly. Janice did not recall telling the police defendant had screamed, "Fuck you, bitch, I'm just gonna get some from one of my other bitches." She told the police she just wanted defendant to leave because she thought he was going to choke her. She was frightened by the hug. She denied telling the police defendant lifted her off the ground or shook her. She did not tell them that when he released her, she fell to the ground or that she screamed at defendant that she would call the police. She might have told officers she scratched defendant's arms.

Cecilia was arrested for grand theft auto in 2006, but no charges were filed. Stephanie Harris testified she was with Cecilia on December 30, 2006, when they were both arrested for car theft. Cecilia had driven the car without the owner's permission. Cecilia and Harris kept the car for a couple days, and both of them drove it. Cecilia denied she and Harris argued over drug money or the car during that incident.

Jeffrey was arrested for domestic violence against Cecilia on March 21, 2012. Officer Ricardo Hernandez of the Los Angeles Police Department responded to the 911 call. Cecilia told him Jeffrey said, "I spend too much money on you, bitch," and that he jumped her while she was on the couch, pulled her hair, slapped her on the face, and ripped her sweater. She said she had a rug burn under her left breast. Cecilia was crying and appeared fearful.

At trial, Jeffrey admitted he had been arrested, but he denied he had harmed Cecilia and asserted the case had been dropped.

Cecilia testified that she called the police because she and Jeffrey had gotten into a big argument, and she wanted to prevent things from getting violent. She denied that she told the officer Jeffrey had harmed her. She was angry when the officer got there, so she could have said anything.

7

## DISCUSSION

### *Testimony Regarding Defendant's Parole Status*

Prior to presentation of evidence, the parties agreed defendant's prior convictions were not relevant to the case and would therefore not be admitted. Accordingly, the trial court admonished Makeisha not to mention that defendant was a parolee in her testimony.

Janice, however, had not been similarly admonished and, during direct examination, described defendant as a parolee when recounting her conversation with the 911 operator following her incident with defendant. She stated, "But when I hit the 911, I did say, 'I have a parolee here choking my neck.'" In response, counsel for defendant requested that the trial court admonish Janice outside the hearing of the jury, which the trial court did.

When her direct testimony resumed, Janice mentioned defendant's parole status a second time: ". . . I said, 'Well, he grabbed me like this with a hug, so I thought he was going to choke me, so I pushed a button and they said 911, and I just said it's a parolee here choking my neck,' but it was just a hug. It was no choke." The trial court then admonished the jury: "Ladies and gentlemen, there has been a characterization as far as the defendant is concerned made by the witness. You are to disregard that. She has no information one way or the other about that and is not competent to testify on that subject. So just consider the testimony as it relates to the incident in question, not her characterization of the defendant."

Defense counsel moved for mistrial the next day, in part due to Janice's mention of defendant's parole status. The trial court denied the motion on the basis that any prejudice to defendant was cured by its admonition to the jury. Defendant challenges the court's ruling.

The trial court should grant a mistrial only where it "is apprised of prejudice that it judges incurable by admonition or instruction," such that the defendant's chances of receiving a fair trial have been "irreparably damaged." (*People v. Haskett* (1982) 30

8

Cal.3d 841, 854; *People v. Bolden* (2002) 29 Cal.4th 515, 555 (*Bolden*).) "'Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions.' [Citation.]" (*People v. Wharton* (1991) 53 Cal.3d 522, 565 (*Wharton*).) Accordingly, we review the trial court's denial of a motion for mistrial under the deferential abuse of discretion standard. (*Bolden*, *supra*, 29 Cal.4th at p. 555.)

"[A] witness's volunteered statement can . . . provide the basis for a finding of incurable prejudice." (*Wharton*, *supra*, 53 Cal.3d at p. 565.) "[The] jury is presumed to have followed an admonition to disregard improper evidence particularly where there is an absence of bad faith[, however]. [Citations.] It is only in the exceptional case that 'the improper subject matter is of such a character that its effect . . . cannot be removed by the court's admonitions.'" (*People v. Allen* (1978) 77 Cal.App.3d 924, 934-935 (*Allen*), quoting *People v. Seiterle* (1963) 59 Cal.2d 703, 710.)

As defendant highlights with citations to numerous cases, exposing a jury to a defendant's prior criminality *may* present the possibility of prejudice necessitating a mistrial under certain circumstances. (*People v. Harris* (1994) 22 Cal.App.4th 1575, 1580 (*Harris*).) The present case is distinguishable from the cases upon which defendant relies, however, because those cases have only held such exposure incurable where the evidence was close. (*People v. Navarrete* (2010) 181 Cal.App.4th 828, 834-838 [police detective's allusion to defendant's confession not curable where the misconduct was calculated and the evidence against him was "not overwhelming"]; *People v. Felix* (1993) 14 Cal.App.4th 997, 1007-1009 [mention of prior conviction warranted reversal where evidence of guilt was weak and prosecutor "directly urged the jury to use the prior conviction against [defendant]."]; *People v. Vindiola* (1979) 96 Cal.App.3d 370, 384-385 [trial court erred in admitting three booking photographs of defendant and refusing to give instructions requested by defendant, where it was "a close case on the critical issue of identification"], overruled on different grounds in *People v. Wright* (1987) 43 Cal.3d 399, 414, fn. 18; *People v. Anderson* (1978) 20 Cal.3d 647, 649-652 [trial court erred in admitting evidence that defendants had twice been arrested together on unspecified

9

charges over defendant's objection in light of the fact that the case was close]; *Allen*, *supra*, 77 Cal.App.3d at pp. 934-935 [statement that defendant was "on parole" incurable by admonition in an "extremely close case"]; *People v. Roof* (1963) 216 Cal.App.2d 222, 225, 227 [statement that defendant had previously been "charged with contributing to delinquency of a minor" incurable by admonition when criminal intent was a "close question"]; *People v. Ozuna* (1963) 213 Cal.App.2d 338, 339, 341-342 [statement that defendant was an "ex-convict" incurable by admonition when it resulted from "calculated" misconduct and close evidence resulted in hung jury in first trial]; *People v. Figuieredo* (1955) 130 Cal.App.2d 498, 504-506 [mention that defendant "did time" by investigating officer calculated to disclose that defendant was an ex-convict was prejudicial misconduct requiring reversal where there was significant "conflict in the evidence as to the identity of the [perpetrator]"]; *People v. Bentley* (1955) 131 Cal.App.2d 687, 689-691 [police officer's mention of prior charges warranted reversal where prosecutor should have admonished the officer prior to testimony and the evidence was close], overruled on other grounds by *People v. White* (1958) 50 Cal.2d 428, 430-431.)

Here, in contrast, defendant was not likely prejudiced by Janice's testimony, and the case is not sufficiently close to warrant the conclusion that the trial court abused its discretion. Defendant attacked Janice less than a year and a half before the charged incident took place. Janice called 911 and reported that defendant was choking her—one of the ways in which defendant also attacked Makeisha. Defendant fled when the police arrived. Janice told an officer at the scene that defendant had attacked her four times in the past, and these incidents were documented by law enforcement. In light of the fact that the jury had already been made aware of several documented incidents of domestic violence by defendant against Janice that occurred prior to the incident she described, it is unlikely that her brief mentions of defendant's parole status constituted irreparable prejudice that could not be cured by a prompt admonition. The trial court admonished the jury to disregard Janice's characterization of defendant, and the court undermined Janice's authority with respect to defendant's parole status by stating, "She has no

10

information one way or the other about that and is not competent to testify on that subject." We presume the jury understood the trial court's admonition and followed it. (*People v. Sims* (1976) 64 Cal.App.3d 544, 554-555 [jury is presumed to follow admonitions to disregard improper evidence].)

Defendant argues that the length of the jury's deliberations and their request for readbacks of testimony are indicative of a close case. We find this argument unpersuasive. First, there is no reason to believe, *in any case*, that the length of deliberations is an indication of the closeness of a case. Second, the jury deliberated for approximately six and a half hours,[5] which is not an inordinate amount of time when compared to the several days the parties spent presenting the evidence. In light of this, "the length of the deliberations could . . . be reconciled with the jury's conscientious performance of its civic duty, rather than its difficulty in reaching a decision." (*People v. Walker* (1995) 31 Cal.App.4th 432, 439 (*Walker*) [six- and a half-hour deliberation following two- and a half-hour presentation of evidence did not indicate that the evidence was closely balanced].) Indeed, following the readback of testimony, the jury returned its verdict in under ten minutes, from which it can be inferred the jury was already close to a verdict and merely needed to verify one detail.

Moreover, the record contains strong evidence of defendant's guilt. On the day of the incident, defendant threatened to cut Makeisha "in pieces," while wielding a kitchen knife. Later that day, defendant put Makeisha in a chokehold, punched her, and threatened to kill her. Late that night, defendant punched Makeisha in the mouth several times. When police arrived at Cecilia's apartment very early on the following morning, Makeisha had a laceration on her lower lip, and her mouth and cheek were swollen. The police discovered a white hoodie with blood on it in the apartment, which Makeisha had used to wipe the blood from her mouth after defendant struck her. Defendant was sleeping next to Makeisha and was arrested at the scene. The case was not close as

---

[5] This excludes the time the jurors spent listening to the testimony being read back, as they were not deliberating at that time. (See *Walker, supra,* 31 Cal.App.4th at p. 438.)

11

defendant contends; the evidence convincingly showed that defendant inflicted corporal injury on Makeisha.

Finally, on this record, we cannot conclude it is reasonably probable defendant would have obtained a better outcome in the absence of error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Accordingly, reversal of the order denying defendant's motion for mistrial is not required. (See, e.g., *Harris, supra,* 22 Cal.App.4th at pp. 1580-1581 [mention of parole status harmless in light of overwhelming evidence of guilt]; *People v. Morgan* (1978) 87 Cal.App.3d 59, 65 [mention of parole status and defendant's residence in a halfway house harmless in light of overwhelming evidence against him], overruled on other grounds in *People v. Kimble* (1988) 44 Cal.3d 480, 496, fn. 12; *People v. Stinson* (1963) 214 Cal.App.2d 476 [testimony mentioning two prior convictions not reversible error where "record point[ed] emphatically to defendant's guilt"].)

### *Limitation on Examination of Impeachment Witness*

Defendant contends the trial court's restriction of the scope of his examination of Harris violated his right to present a complete defense under the Sixth and Fourteenth Amendments.[6] Harris and Cecilia were arrested for car theft in 2006. With respect to the 2006 incident, Cecilia denied that the car theft was preceded by an argument with Harris over whether she would lend Cecilia money for drugs and give her a ride in the car. Makeisha had testified that, on the day of the charged incident, she and Cecilia argued over whether Makeisha would give Cecilia money for drugs and allow her to use Makeisha's car. According to Makeisha, Cecelia was upset about her refusals and told

---

[6] The prosecution's contention that defendant forfeited this argument on appeal by failing to specifically object on constitutional grounds fails. Defense counsel argued strenuously against the limitations on Harris's testimony, at one point stating that the trial court was "denying [defendant's] constitutional right to present a defense." We deem this language sufficient to preserve defendant's argument and will review it on the merits.

Makeisha that she and defendant would have to leave Cecilia's apartment. Cecilia denied she had argued with Makeisha about money for drugs or the car.

Defendant proposed to call Harris to impeach Cecilia's credibility with respect to her denial of the alleged argument in 2006.[7] Defense counsel argued that the circumstances were parallel, such that Cecilia's 2006 auto theft charge "related directly" to the present case with respect to bias and motive. The trial court denied the request to admit testimony about the alleged 2006 argument over the car and money, because it was inadmissible under Evidence Code section 1101, and not relevant to the case.[8] The court allowed the defense to call Harris for the limited purpose of testifying as to whether the 2006 car theft occurred.

"'Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense."'" (*Holmes v. South Carolina* (2006) 547 U.S. 319, 324, quoting *Crane v. Kentucky* (1986) 476 U.S. 683, 690.) "Few rights are more fundamental than that of an accused to present witnesses in his own defense." (*Chambers v. Mississippi* (1973) 410 U.S. 284, 302 (*Chambers*).) Where the trial court excludes evidence vital to the defendant's defense it deprives him of a fair trial in violation of his right to due process. (*People v. Babbit* (1988) 45 Cal.3d 660, 684-685, discussing *Chambers*, *supra*.)

However, "[i]n the exercise of this right, the accused . . . must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." (*Chambers, supra,* 410 U.S. at

---

[7] Harris was called to the witness stand without prior notice to the prosecution that the defense intended to call her as a witness. The prosecution objected to Harris's testimony as a discovery violation.

[8] Evidence Code section 1101, subdivision (a) provides that "evidence of a person's character or a trait of his or her character . . . is inadmissible when offered to prove his or her conduct on a specified occasion."

p. 302.) The trial court may impose reasonable limits on defense counsel's inquiry into a witness's credibility based on concerns about harassment, confusion of the issues, or relevance. (*People v. Brown* (2003) 31 Cal.4th 518, 545; Evid. Code, § 352.) The usual rule is that ""'the ordinary rules of evidence do not impermissibly infringe on the accused's [constitutional] right to present a defense. . . .""' [Citations.]" (*People v. Lawley* (2002) 27 Cal.4th 102, 155.) We will not disturb a trial court's exercise of discretion in excluding evidence on appeal "'*except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)

We conclude the trial court did not abuse its discretion in this case. Cecilia testified that she was arrested for grand theft of the automobile. She maintained that she was not charged with the crime (which the prosecution verified to the trial court), and that the argument over money and the car never occurred. Any attempt to take the subject further and impeach her with respect to her statement about the circumstances in an uncharged crime would stray beyond the relevant issues in this case. Whether the 2006 argument took place has no bearing on whether defendant inflicted corporal punishment on Makeisha several years later. It was not an abuse of discretion to limit the scope of Harris's testimony to exclude the issue, which was not relevant and therefore excludable under the ordinary rules of evidence. (See Evid. Code § 352 ["The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."].)

### *Ineffective Assistance – Failure to Object / Properly Object to Past Acts Evidence*

Defendant contends that his attorney provided ineffective assistance by failing to object to Cecelia's statements regarding defendant's past abuse of Makeisha and by

14

failing to object to Cecilia's testimony that defendant ran over Makeisha with her car, on the ground that Cecilia lacked personal knowledge of the incident.

"To secure reversal of a conviction upon the ground of ineffective assistance of counsel under either the state or federal Constitution, a defendant must establish (1) that defense counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney, and (2) that there is a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003 (*Cunningham*), citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-694 (*Strickland*); *Williams v. Taylor* (2000) 529 U.S. 362, 391-394; *People v. Kraft* (2000) 23 Cal.4th 978, 1068 (*Kraft*).) "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' ([*Strickland*, *supra*, at p. 694]; *People v. Riel* (2000) 22 Cal.4th 1153, 1175.)" (*Cunningham*, *supra*, at p. 1003.)

"The Sixth Amendment guarantees competent representation by counsel for criminal defendants[, and reviewing courts] presume that counsel rendered adequate assistance and exercised reasonable professional judgment in making significant trial decisions." (*People v. Holt* (1997) 15 Cal.4th 619, 703, citing *Strickland, supra*, 466 U.S. at p. 690; *People v. Freeman* (1994) 8 Cal.4th 450, 513.) "A defendant who raises the issue on appeal must establish deficient performance based upon the four corners of the record. 'If the record on appeal fails to show why counsel acted or failed to act in the instance asserted to be ineffective, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal.'" (*Cunningham*, *supra*, 25 Cal.4th at p. 1003, citing *Kraft*, *supra*, 23 Cal.4th at pp. 1068-1069; *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.) The decision to object to the admission of evidence is tactical in nature, and a failure to object will seldom establish ineffective assistance. (*People v. Williams* (1997) 16 Cal.4th 153, 215.) Given the presumption of reasonableness proper to direct appellate review, our Supreme Court has "repeatedly emphasized that a claim of ineffective assistance is more appropriately decided in a habeas corpus proceeding. [Citations.] The

defendant must show that counsel's action or inaction was not a reasonable tactical choice, and in most cases ""the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged . . . ."" [Citations.]" (*People v. Michaels* (2002) 28 Cal.4th 486, 526.)

Here, there is nothing in the four corners of the record to indicate defense counsel's motivation for her tactical decisions, which is reason enough to reject the issue on direct appeal. But even if we were to conclude that no satisfactory explanations exist for counsel's decisions, any error was harmless with respect to defendant's contention that trial counsel rendered ineffective assistance by failing to object to Cecilia's testimony.

Regarding defendant's first contention that counsel's performance was deficient because she failed to object to portions of Cecilia's testimony, the complained of testimony includes Cecilia's statements that defendant "used to" punch Makeisha with his fists, that Cecilia told Makeisha she was sick of defendant's behavior and he had to go, that Cecilia "used to" ask defendant why he was hitting her daughter, that defendant "always said" he was going to kill Makeisha after he had punched or abused her, that Makeisha "used to" let him hit her, and that every time defendant hit Makeisha or abused her, Makeisha would say, "'Mommy, why is he doing this to me?'"[9] There is no reasonable probability that defendant would have obtained a more favorable result had counsel objected to these statements. Evidence was presented of several instances of violence throughout the day in question, in which defendant choked and punched Makeisha, and threatened to carve her to pieces while brandishing a knife. Given the serious and continual nature of these episodes that occurred within a less than 24-hour

---

[9] Defendant also complains that trial counsel failed to object to Cecilia's testimony that defendant ran over Makeisha with her car. Counsel *did* object to this statement, however, as defendant concedes in his second contention with respect to counsel's ineffective assistance. We therefore address counsel's alleged failure with respect to this particular statement below.

16

period, there is no reason to expect that the outcome of trial would have been different if Cecilia did not allude to previous incidents.

Defendant also contends that trial counsel rendered ineffective assistance by failing to object to Cecilia's testimony that defendant ran over Makeisha with a car, based on the specific ground that Cecilia lacked personal knowledge of the incident,[10] which "paved the way" for Officer Cummings's testimony that he observed a fresh wound with stitches on Makeisha's upper thigh and that defendant admitted he had hit Makeisha with a car. In particular, defendant contends that trial counsel failed to properly object to Cecilia's statement that "[defendant] had been beating [Makeisha] for a month and he ran over her with her own car. She had 25 stitches. I have pictures of it," which she made in response to the prosecutor's inquiry on redirect as to whether defendant and Makeisha had stayed at her apartment for longer than a month.

Defendant's argument lacks merit, because trial counsel *did*, in fact, object to Cecilia testifying as to the car incident on the ground that she lacked personal knowledge of the event. In a hearing on the admissibility of evidence prior to trial, counsel objected to admission of any testimony by Cecilia with respect to the car incident because Cecilia was "actually not present at that incident." Trial counsel expounded that "the victim had told her possibly about that incident, but I don't believe that Cecilia T. was actually present during the incident. [¶] And so I'm afraid that this information is going to come in, but it's through a witness that's not actually observed or was present during the incident." The trial court responded, "Well, if it's hearsay that you're concerned about, you need not be because hearsay isn't admissible."

After Cecilia testified that defendant hit Makeisha with a car, the prosecutor inquired, "Now, did you ever see that?" Cecilia answered, "Did I see it? People called me on the phone over there in the neighborhood where Grandma saying he ran her over and told me your daughter is in the middle of the street." Defense counsel objected that

---

[10]    Defendant concedes that trial counsel objected to the statement as outside the scope of cross-examination.

17

this exceeded the scope of cross-examination but was overruled. The prosecution then asked, "Were you present when that happened?," and Cecilia answered, "No, I was at home."

Prior to Officer Cummings's testimony, there was another hearing on the admissibility of evidence, this time with respect to the officer's proposed testimony about defendant's admission that he had hit Makeisha with a car. Trial counsel again argued that Cecilia's testimony, which she maintained was the basis for admission of the officer's testimony, was hearsay, stating "Cecilia took the stand and said she had no personal knowledge. She said that she didn't see [the car incident], that she wasn't there. That came out during testimony and it's basically hearsay."

Finally, trial counsel argued Cecilia had no personal knowledge of the car incident in her mistrial motion, as well. We conclude that trial counsel rendered adequate assistance and exercised reasonable professional judgment in her objections to Cecilia's testimony about the car incident. She acted exactly as defendant argues she should have, and therefore could not have rendered ineffective assistance in this respect. (See *People v. Marshall* (1990) 50 Cal.3d 907, 949.)

### *Prior Prison Term Enhancements*

Finally, we agree with the parties that the case must be remanded for clarification of whether two of the three section 667.5, subdivision (b) enhancements were imposed or stricken. Defendant admitted serving three prior prison terms within the meaning of section 667.5, subdivision (b). It appears from the transcript that the trial court struck one of the prior prison enhancements at sentencing. The court failed to impose or strike the remaining two enhancements, however, as is required. (See *People v. Bradley* (1998) 64 Cal.App.4th 386, 390-392, 400-401.) Accordingly, we remand to give the trial court the opportunity to strike or impose those enhancements. (*People v. McCray* (2006) 144 Cal.App.4th 258, 267.)

18

## DISPOSITION

The cause is remanded to the trial court with directions to either impose or strike the remaining two prior prison term enhancements under section 667.5, subdivision (b). The clerk of the superior court is directed to prepare and forward to the Department of Corrections and Rehabilitation the amended abstract of judgment reflecting the judgment after disposition of the prior prison term enhancements. In all other respects, the judgment is affirmed.


KRIEGLER, J.


I concur:


O'NEILL, J.*

---

*      Judge of the Ventura County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

MOSK, J., Concurring

I concur.

With regard to the ineffective assistance of counsel contention, I concur solely on the basis that the claim is more appropriately raised in a habeas corpus proceeding. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)  In such a proceeding, arguments as to whether trial counsel made a tactical decision, whether an objection based on lack of personal knowledge was timely made, and whether the lack of an objection was prejudicial, as well as other issues, can be explored.

MOSK, Acting P. J.